UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KINGSTOWN CAPITAL MANAGEMENT, L.P.; KINGSTOWN PARTNERS MASTER LTD.; KINGSTOWN PARTNERS II, L.P.; KTOWN, LP; KINGSTOWN CAPITAL PARTNERS LLC; INVESTHOLD LTD; and VERALI LIMITED,<br><br>                              Plaintiffs,<br><br>              v.<br><br>RADOVAN VITEK; CPI PROPERTY GROUP, S.A; J&T BANKA, A.S.; J&T FINANCE GROUP SE; POSTOVA BANKA, A.S.; EGNARO INVESTMENTS LIMITED; LCE COMPANY LIMITED; LEVOS LIMITED; ROTHSCHILD & CO.; TOMÁŠ DAVID; RENÉ FOLTÁN; JAN GERNER; MILADA MALA; MARTIN NĚMEČEK; JEAN-FRANÇOIS OTT; LUMIR SAFRANEK; PAVEL SPANKO; and JULIUS STRAPEK,<br><br>                              Defendants. | No. 1:19-cv-03170-DLC<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' MAY 22ND OPPOSITION MEMORANDUM AND IN FURTHER SUPPORT OF MOVING DEFENDANTS' <u>MOTIONS TO DISMISS THE AMENDED COMPLAINT</u>**

Dated: June 5, 2020

Michael C. Hefter
Seth M. Cohen
Marisa H. Lenok
Andrew M. Harris
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T:  212-918-3000

*Attorneys for Defendants Radovan Vitek, CPI Property Group, S.A., Milada Mala, and Martin Němeček*

Pursuant to the Court's May 29, 2020 Order (Dkt. No. 220), the Moving Defendants[1] respectfully submit this response to certain arguments raised in Plaintiffs' May 22, 2020 opposition memorandum (Dkt. No. 211, the "May 22 Opposition" or "May 22 Opp.") and the Declaration of Francois Moyse, dated May 22, 2020 in Opposition (Dkt. No. 212, the "New Moyse Declaration" or "New Moyse Decl."), and in further support of their motions to dismiss the Amended Complaint ("AC") (Dkt. Nos. 140, 143, 146, 158, 161, 164).

## INTRODUCTION

Plaintiffs' May 22 Opposition (filed ostensibly to respond to the motions to dismiss of three later-served defendants—Foltan, David and Sekanina) is nothing more than a sur-reply in response to the Moving Defendants' reply memoranda, and the Declaration of Professor Andre Prüm, submitted therewith. These fully briefed motions to dismiss were *sub judice* as of April 24, 2020.[2] This responsive memorandum is limited to *new* arguments raised by Plaintiffs in the May 22 Opposition and in the New Moyse Declaration.[3]

---

[1] The defined term "Moving Defendants" refers to: CPI Property Group, S.A., Radovan Vitek, Milada Mala, and Martin Němeček (collectively, the "CPI Defendants"), Jan Gerner, Jean-François Ott, Rothschild & Co SCA, Pavel Spanko, and Julius Strapek.

[2] Plaintiffs' justification for responding improperly to Moving Defendants' reply memoranda—namely, because Foltan, David and Sekanina "joined in . . . the first round of dismissal briefing" is a *non sequitur*. Those later-served defendants cannot have joined in Moving Defendants' reply arguments because their motions to dismiss were filed *before* (April 17) Moving Defendants filed their replies (April 24).

[3] Moving Defendants will not address arguments in the May 22 Opposition which merely restate or repackage arguments raised in the Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (the "First Opposition"). Moving Defendants rest on the arguments raised in their previously filed memoranda, which include: (1) the impermissible extra-territorial application of the RICO statute; (2) lack of personal jurisdiction; (3) untimeliness of Plaintiffs' RICO claims; (4) the existence of a prior pending action in Luxembourg; and (5) Plaintiffs' failure to plead a civil RICO claim on the merits. Each of these arguments is a sufficient, independent basis to dismiss the Amended Complaint.

## ARGUMENT

First, Plaintiffs are wrong that the Moving Defendants must declare their "amenability to service" in Luxembourg for the courts in that country to be deemed an adequate alternative forum, and nothing in the authorities cited by Plaintiffs suggests otherwise. May 22 Opp. at 24. As Professor Prüm explained, so long as a "single defendant, such as CPI Property Group, were sued in a Luxembourg court, that court could, in the same or connected matters, have jurisdiction over any co-defendant domiciled in the EU." Prüm Decl. ¶ 17. This is enough to satisfy the "amenability to service" requirement. *See* CPI Defendants' Reply Memorandum (Dkt. No. 200) at 22. The New Moyse Declaration ignores this point, indicating that Plaintiffs have no argument in response.

Second, Plaintiffs contend that Luxembourg is an inadequate alternative forum because its "combination of practical difficulties and other legal obstacles" would render Plaintiffs' remedies "ineffectual." May 22 Opp. at 25 n.26. That is not the law. A forum will be deemed inadequate only where the remedy it offers is "clearly unsatisfactory," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265, n.22 (1981), and "such a finding [of inadequacy] is rare." *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998). Plaintiffs once again distort *Piper*'s "clearly unsatisfactory" standard, which requires a showing—clearly absent here—that "no remedy at all" is available to the litigant in the alternative forum. *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 159 (S.D.N.Y. 2004); *see also In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 499 (2d Cir. 2002) (describing an inadequate forum as one "characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties").

Mr. Moyse now acknowledges that the availability of pre-trial discovery in Luxembourg is broader than described in his first declaration, yet he attempts to convince the Court that his inconsistency is not relevant because under either his first or second formulation, discovery in the United States would be broader than in a Luxembourg court. *Compare* Dkt. No. 180 (the "First Moyse Declaration") ¶¶ 20-23 *with* New Moyse Decl. ¶¶ 25-33. What Plaintiffs ignore, however, is that even if discovery in Luxembourg is narrower than it is in the United States (which Moving Defendants do not concede), that does not make Luxembourg an inadequate forum. *See, e.g., Wenzel v. Marriott Int'l, Inc.*, 629 F.App'x 122, 124 (2d Cir. 2015) (internal citations and quotations omitted) ([t]he unavailability of beneficial litigation procedures [such as pre-trial discovery] similar to those available in the federal district courts does not render an alternative forum inadequate"); *Adamowicz v. Barclays Priv. Equity Fr. S.A.S.*, 2006 WL 728394, at *3 (S.D.N.Y. Mar. 22, 2006) (the inability to "confront witnesses" and "present testimony before the fact finder" does not render a foreign forum inadequate).[4]

Third, Plaintiffs submit the New Moyse Declaration to rebut Professor Prüm's testimony that numerous causes of actions are available to litigants under Luxembourg law to cover claims similar to those alleged in the Amended Complaint, including fraud, conspiracy, and money laundering. May 22 Opp at 25; Prüm Decl. ¶¶ 43-56. It bears noting in this regard that in Mr. Moyse's First Declaration, he indicated that Plaintiffs were limited to two causes of action under Luxembourg law. First Moyse Decl. ¶¶ 29, 35. In the New Moyse Declaration, Mr. Moyse backtracks, acknowledging expressly that many of the claims and remedies identified by Professor Prüm are in fact cognizable under Luxembourg law. Mr. Moyse attempts to explain

---

[4] The New Moyse Declaration also glosses over numerous additional subsections of the New Code of Civil Procedure cited by Professor Prüm that highlight the available mechanisms for discovery and witness testimony. *See* Prüm Decl. ¶¶ 28-31.

3

away those causes of action on the supposition that they may not apply to Plaintiffs' claims. *See, e.g.*, New Moyse Decl. ¶¶ 36-44. These attempts fail for at least five reasons:

- Professor Prüm explained that under Articles 1382 and 1383 of the Luxembourg Civil Code (not referenced in the First Moyse Declaration), a litigant has a "virtually unlimited scope" to raise civil claims under the *bonus pater familias* doctrine, which imposes liability for behavior "not meeting the standard of a normally prudent and diligent person finding itself in the same circumstances." Prüm Decl. ¶ 54. Mr. Moyse responds by attempting to limit the doctrine's scope—he contends that the doctrine is unavailable as a "practical matter" because it can be asserted only "very rarely" and has been criticized by one commentator as "vague and indeterminate." *See* New Moyse Decl. ¶¶ 42-43. But this does not mean that the *bonus pater familias* cause of action is *unavailable* to Plaintiffs, and a commentator's opinion of a doctrine does nothing to affect its legal force or applicability.[5] *See Dabbous v. Am. Express Co.*, 2009 WL 1403930, at *6 (S.D.N.Y. May 8, 2009) (fact that remedies in Egypt were more "difficult or time-consuming for Plaintiff to obtain" was not sufficient).

- In response to Mr. Moyse's assertion that "private parties ordinarily have no codified causes of action for remedying fraud," *see* First Moyse Decl. ¶ 28, Professor Prüm explained that, in fact, a private litigant can pursue tort claims for damages in Luxembourg based on violations of the penal code, such as fraud or money laundering. Prüm Decl. ¶¶ 47-50. Mr. Moyse now acknowledges (having made no reference to this procedure in the First Declaration), however, that, as "theoretical

---

[5] In fact, Kingstown itself asserted claims under Articles 1382 and 1383 in the Luxembourg Litigation. Dkt. No. 148-1 at 38.

matters," a private plaintiff *could* file a *plainte avec constitution de partie civile* or a *citation directe par la partie civile* to assert a direct claim for damages, but that such claims are inapplicable here only because they have a five-year statute of limitations. New Moyse Decl. ¶¶ 38-39. Mr. Moyse's response contradicts Plaintiffs' previous position on statute of limitations. The Prüm Declaration notes that for purposes of a tort claim (on which the penal proceeding is based), the statute of limitations "starts from the date on which the person who has suffered a loss has knowledge of his loss." Prüm Decl. ¶ 42. Plaintiffs' oft-repeated allegation in this action is that they "did not have actual notice of Vitek's scheme until . . . December 8, 2017." May 22 Opp. at 31 (citing AC at ¶ 456). Plaintiffs cannot have it both ways: they cannot posit that their claims would be time-barred in Luxembourg based on the fact that they were on notice of their injury earlier than 2015, while arguing at the same time to this Court that they lacked notice of the same injury until 2017 to avoid dismissal based on RICO's four-year limitations period.[6]

- In response to Professor Prüm's discussion of Article 6-1 of Luxembourg's Civil Code, under which a litigant can impose tort liability for abuses of commercial rights, *see* Prüm Decl. ¶ 77, Mr. Moyse retorts that Article 6-1 would not apply to Plaintiffs' claims because it requires a showing of (1) the "malicious exercise of bad faith," as well as (2) an affirmative legal right possessed by the tortfeasor and used against the litigant. New Moyse Decl. ¶ 41. Mr. Moyse's application of this doctrine

---

[6] Even assuming *arguendo* that Plaintiffs' claims are time-barred in Luxembourg, Plaintiffs should not be able to reap the benefit of their own strategic missteps. *Mayer v. Time, Inc.*, 2018 WL 1738322, at *5 (S.D.N.Y. Apr. 9, 2018) (Cote, J.) ("Because any U.K. statute of limitations impediment to plaintiff's prosecution of this case in the U.K. is a result of her informed litigation strategy, this Court will not refuse to dismiss this action on forum non conveniens grounds....").

is mystifying; he writes that "the vast majority of Defendants do not appear to hold any legal right over the Plaintiffs" that would satisfy the second criterion, without specifying to which Moving Defendants he refers or what rights they may hold. *Id.* Indeed, *both* criteria identified by Mr. Moyse for applying Article 6-1 are addressed in the AC: not only are Plaintiffs' allegations replete with suggestions of Moving Defendants' bad faith, *see, e.g.*, AC ¶¶ 3, 132, 204-06, 478-82, but their entire alleged scheme revolves around Vitek purportedly leveraging his affirmative rights as the majority shareholder against Kingstown.[7]

- In an attempt to distinguish the causes of action cited by Professor Prüm, Mr. Moyse highlights numerous causes of action that potentially apply to claims raised by the Investhold Plaintiffs. For example, Mr. Moyse dismisses Professor Prüm's opinion that Plaintiffs could bring a *dol* claim, akin to fraudulent inducement, because such a claim must implicate "a relevant contract," which "[m]any of the claims in the Amended Complaint do not...." New Moyse Decl. ¶ 40. But Mr. Moyse offers no explanation as to why the Investhold Plaintiffs could not attempt to bring a *dol* claim in Luxembourg, as those Plaintiffs' claims arise from the so-called "parity partnership" contract. The same is true for Mr. Moyse's discussion of Luxembourg's analogue to tortious interference, which he declares is inapplicable because the "claims in the Amended Complaint, *with the possible exception of the claims based on the 'parity partnership,'* do not appear to relate to contract breaches." *Id.* ¶ 44

---

[7] If nothing else, the Kingstown Plaintiffs may remain able to assert a claim under the *actio de in rem verso* doctrine in Luxembourg—one of the two mentioned in the First Moyse Declaration—which functions akin to an unjust enrichment claim. New Moyse Decl. ¶ 53. Plaintiffs explain that this cause of action cannot be brought where there is a contract, and they affirmatively state that no such claim could be made in relation to the "parity partnership." *Id.* ¶ 54. But this leaves open the possibility that the Kingstown Plaintiffs, with no alleged contractual relationship, might be able to bring such a claim.

6

(emphasis added). And the fact that the Investhold Plaintiffs are already raising tortious interference claims in this action only confirms that they would try the same in Luxembourg. AC ¶¶ 524-29.

- Finally, with respect to Plaintiffs' conspiracy claims, Plaintiffs fail to offer a response to Professor Prüm's citation to Article 1384 of Luxembourg's Civil Code, which permits a damages claim whenever a tortfeasor can be held vicariously liable for the wrongdoing of one of its agents. Prüm Decl. ¶ 71.

Fourth, in assessing the adequacy of an alternative forum, courts can (and regularly do) consider case law addressing a forum's adequacy. Courts are not required, as the May 22 Opposition advocates, to rely on foreign-law expert declarations to make this determination. For example, in *Ilusorio v. Ilusorio-Bildner*, 103 F. Supp. 2d 672, 674 (S.D.N.Y. 2000), a case cited in the CPI Defendants' reply (Dkt. No. 200 at 22-23), the *starting point* for the Court's analysis was precedent deeming the Philippines to be an adequate forum, regardless of whether expert declarations had been submitted. *Ilusorio*, 103 F. Supp. 2d at 674; May 22 Opp. at 25. Although the Court considered a declaration proffered by the defendant as part of its analysis, nothing in the *Ilusorio* decision supports Plaintiffs' assertion that a declaration is "necessary." May 22 Opp. at 25. Plaintiffs similarly fail to distinguish *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474 (S.D.N.Y. 2006), a case in which Judge Castel, without the aid of expert declarations, concluded that "the competence of the judges of [England] to adjudicate this dispute is beyond serious challenge," citing only a prior, similar case. *Gilstrap*, 443 F. Supp. 2d at 481-82.

Tellingly, Plaintiffs have provided no response to the cases cited by the CPI Defendants finding Luxembourg to be an "obviously adequate" forum for claims similar to those asserted in this case. *See* CPI Defendants' Reply at 23 (citing *In re Herald, Primeo, and Thema Sec. Litig.*,

7

2011 WL 5928952, at *14 (S.D.N.Y. Nov. 29, 2011) and *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 952 (11th Cir. 1997)).[8]

Plaintiffs also argue that because they allegedly put Moving Defendants on "explicit notice of the need for [a foreign law declaration]" before the filing of the motions to dismiss, the Court should not consider the Prüm Declaration, which was submitted by the CPI Defendants contemporaneously with its reply memorandum. May 22 Opp. at 24-25. Plaintiffs appear to suggest—without support—that a letter they filed in September 2019 in opposition to Moving Defendants' motion to stay discovery, which referenced Plaintiffs' position that "the opinions of foreign law experts" are "typically" utilized to prove the existence of an adequate alternative forum (*see* Dkt. No. 90), somehow warrants exclusion of an otherwise valid foreign legal opinion because it was not filed with the CPI Defendants' opening brief. Plaintiffs fail to address, much less reconcile their position with, case law cited by the CPI Defendants in which foreign law declarations were permitted to be introduced for the first time on reply. *See* May 22 Opp. at 25 n.25. And in any event, Plaintiffs' filing of *two* declarations by Mr. Moyse, one in response to the Prüm Declaration,[9] obviates any alleged prejudice claimed by Plaintiffs.[10]

---

[8] The one time that Plaintiffs do address these cases, in their First Opposition, they completely miss the point of the argument. *See* First Opp. at 64 (purporting to distinguish the cases because the courts accepted and relied on expert declarations in both).

[9] Unable to respond on the merits to Professor Prüm, Plaintiffs seize on a single misinterpretation of a legal term translated from French to English—having no bearing on the merits of the arguments—to launch a series of baseless *ad hominem* attacks on Professor Prüm. *See, e.g.*, New Moyse Decl. ¶ 61 ("Only individuals who lack adequate experience litigating in Luxembourg courts would confuse a brief with an amended summons or pleading"); May 22 Opp. at 26 ("[T]his Court should question the opinion of an academic . . . who misunderstands basic Luxembourg civil procedure by confusing a pleading with a brief."). There can be no dispute Professor Prüm is eminently qualified to opine in this case. He served for seven years as the Dean of the University of Luxembourg's Faculty of Law, Economics, and Finance, and has been chosen to lead the Luxembourg government's efforts to restructure and modernize its financial statutes and jurisprudence. Prüm Decl. Ex. A.

Fifth, Plaintiffs' attempt to distinguish *Wilder v. News Corp.* and *John Labatt Ltd. v. Onex Corp.*, two cases cited by the CPI Defendants on reply, also fails. May 22 Opp. at 10, n.10. The CPI Defendants cited these decisions for the proposition that the "articles and press releases" identified by Plaintiffs as part of the so-called "21 fraudulent communications" were not directed to New York for purposes of the Court's jurisdictional analysis. CPI Reply at 10; *see also* AC ¶¶ 94, 102, 176, 205, 486(i). Plaintiffs claim that *Wilder* is inapposite because the press releases at issue in that case appeared merely on a globally-accessible website. May 22 Opp. at 10, n.10. If anything, the press releases alleged in the AC (issued by ORCO in Europe) are even further removed from New York than those in *Wilder* and cannot establish that the Moving Defendants "expressly aimed [their] conduct at New York." *Wilder*, 2015 WL 5853763, at *13 (S.D.N.Y. Oct. 7, 2015) ("Plaintiffs must allege more than the posting of press releases on a website that can be accessed in New York."). As to *John Labatt*, there is no allegation in the Amended Complaint that the articles and press releases solicited U.S. shareholders.[11]

## CONCLUSION

For the reasons set forth herein and in Moving Defendants' prior motion to dismiss briefing, Moving Defendants respectfully request that the Court grant their motions to dismiss the Amended Complaint with prejudice.

---

[10] A foreign law hearing pursuant to Federal Rule of Civil Procedure 44.1 is not required here. *See* May 22 Opp. at 27 n.28. To the extent that the parties' legal experts disagree, such differences are not particularly complex questions of foreign law, and largely concern relative degrees of availability or delay with respect to foreign legal procedures. As explained above, such considerations are not dispositive in the *forum non conveniens* analysis, and the Court is more than capable of reaching its own opinion of these discrete legal issues. *See, e.g.*, *Guidi v. Inter-Continental Hotels Corp.*, 2003 WL 1907901, at *2-*3 (S.D.N.Y. Apr. 16, 2003) (determining question of Egyptian law without live expert testimony).

[11] Moreover, the suggestion in the May 22 Opp. that Vitek himself "directed" the 21 communications "to New York-based financiers" demonstrates the lengths to which Plaintiffs will go to contort not only the law but the allegations in the Amended Complaint. *See* CPI Reply at 10.

| | |
|---|---|
| Dated: June 5, 2020<br>New York, NY | **HOGAN LOVELLS US LLP**<br><br>By: /s/ Michael C. Hefter<br>Michael C. Hefter<br>Seth M. Cohen<br>Marisa H. Lenok<br>Andrew M. Harris<br>390 Madison Avenue<br>New York, NY 10017<br>T: 212-918-3000<br>F: 212-918-3100<br>michael.hefter@hoganlovells.com<br>seth.cohen@hoganlovells.com<br>marisa.lenok@hoganlovells.com<br>andrew.harris@hoganlovells.com<br><br>*Attorneys for Defendants Radovan Vitek, CPI Property Group, S.A., Milada Mala and Martin Němeček* |