UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
KINGSTOWN CAPITAL MANAGEMENT, L.P.;   :
KINGSTOWN PARTNERS MASTER LTD.;       :
KINGSTOWN PARTNERS II, L.P.; KTOWN,   :      19cv3170 (DLC)
LP; KINGSTOWN CAPITAL PARTNERS LLC;   :
INVESTHOLD LTD.; and VERALI LIMITED,  :      OPINION AND ORDER
                                      :
                          Plaintiffs, :
                                      :
              -v-                     :
                                      :
RADOVAN VITEK; CPI PROPERTY GROUP,    :
S.A.; J&T BANKA, A.S.; J&T FINANCE    :
GROUP SE; POSTOVA BANKA, A.S.; EGNARO :
INVESTMENTS LIMITED; LCE COMPANY      :
LIMITED; LEVOS LIMITED; ROTHSCHILD &  :
CO.; TOMÁŠ DAVID; RENÉ FOLTÁN; JAN    :
GERNER; MILADA MALA; MARTIN NEMECEK;  :
JEAN-FRANÇOIS OTT; LUMIR SAFRANEK;    :
PETR SEKANINA; PAVEL SPANKO; and      :
JULIUS STRAPEK,                       :
                                      :
                          Defendants. :
                                      :
------------------------------------- X

APPEARANCES

For plaintiffs:
Craig A. Wenner
Matthew Lane Schwartz
David Paul Nelson
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001

For defendants Radovan Vitek; CPI Property Group, S.A.; Milada
Mala; and Martin Nemecek:
Michael C. Hefter
Andrew Harris
Seth Cohen
Hogan Lovells US LLP
390 Madison Ave.
New York, NY 10017

For defendants J&T Banka, A.S.; Postova Banka, A.S.; and J&T
Finance Group SE:
David W. Rivkin
Joshua Smith
Laura Samuels
Maeve L. O'Connor
Debevoise & Plimpton, LLP
919 Third Avenue, 3rd Floor
New York, NY 10022

For defendant Jan Gerner:
Blaine Bortnick
James Halter
Rasco Klock Perez & Nieto LLC
555 Fifth Avenue, 17th Floor
Ste 17th Floor
New York, NY 10017

For defendant Jean-François  Ott:
Andrew Shapiro
Jonathan E. Feder
Quinn Emanuel Urquhart & Sullivan
51 Madison Avenue
New York, NY 10010

For defendant Lumir Safranek:
Steven J. Fink
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019

For defendant Pavel Španko:
Jack A. Gordon
Alex Paradiso
Joshua B. Katz
Kent, Beatty & Gordon, LLP
Eleven Times Square, 10th Floor
New York, NY 10036

For defendant Julius Strapek:
Konstantin Chelney
Philipp Smaylovsky
Chelney Law Group PLLC
28 Liberty Street, Sixth Floor
New York, NY 10005

For defendant Rothschild & Co. SCA:
Timothy Cameron
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

For defendants Tomáš David and Petr Sekanina:
Carl W. Oberdier
Kellen Ressmeyer
Oberdier Ressmeyer LLP
655 Third Avenue, 28th Floor
New York, NY 11111

For defendant René Foltán:
Scott Kessler
Akerman LLP
520 Madison Avenue, 20th Floor
New York, NY 10022

DENISE COTE, District Judge:

In 2012, several related investment firms that operate out of New York invested in ORCO Property Group, S.A. ("ORCO"), a Luxembourg-based real estate development company whose shares are traded on European exchanges.  In 2015, the investors brought suit in Luxembourg against ORCO and its controlling shareholder Radovan Vitek ("Vitek"), a citizen of the Czech Republic, for violations of European corporate governance regulations ("Luxembourg Action").  Although their Luxembourg Action remains pending, the New York-based investors have now filed this RICO action seeking recovery from Vitek and others for essentially the same misconduct being litigated in the Luxembourg Action.  This Opinion dismisses their claims as a

matter of international comity and under the doctrine of <u>forum non conveniens</u>.  Related claims brought by foreign plaintiffs against Vitek and others are dismissed under the doctrine of <u>forum non conveniens</u>.

### Background

The following facts are taken from the first amended complaint ("FAC"), documents integral to it or incorporated therein, and where appropriate, the parties' submissions on these motions.  The New York-based investment firms that have filed this action are incorporated in either Delaware or the Cayman Islands.  They are Kingstown Capital Management L.P.; Kingstown Partners Master, Ltd.; Kingstown Partners II, L.P.; KTown L.P.; Kingstown Capital Partners LLC (collectively, "Kingstown").[1]  They are joined as plaintiffs by two foreign entities: Investhold Ltd. and its subsidiary, Verali Limited (collectively, "Investhold").[2]

Kingstown alleges that Vitek secretly acquired control over the ORCO board of directors and stripped ORCO of valuable assets to the detriment of minority shareholders like Kingstown.

---

[1] Kingstown Partners Master Ltd. is organized in the Cayman Islands.  The remaining Kingstown entities are organized in Delaware.

[2] Investhold Ltd. and Verali Limited are organized in the Republic of the Marshall Islands and the Republic of Cyprus, respectively.

Investhold alleges that Vitek's maneuvers with ORCO and ORCO's subsidiaries violated a partnership agreement between Vitek and Investhold's principal, Marek Cmejla ("Cmejla"), a citizen of the Czech Republic.

Kingstown's Claims

Kingstown operates from offices in Manhattan.  In 2011, it identified ORCO as a promising target for investment.  It met in New York on three occasions in 2011 and 2012 with ORCO's founder Jean-François Ott ("Ott"), a French citizen who was ORCO's CEO at the time and an ORCO director until 2014.  Kingstown, through a New York broker, bought ORCO bonds in September 2012.  In that same month, Kingstown's bonds were converted into equity.

Vitek began acquiring shares in ORCO in October 2012. Vitek's purchases implicated two European corporate governance laws: a "Transparency Law" requiring any person who acquires more than 5% of the shares of a company to disclose their interest; and the Takeover Bids Act, a European Union regulation that requires any shareholder who acquires more the 33.33% of a company to offer to purchase all other outstanding shares. Vitek enlisted three groups of the defendants named in this action to acquire a controlling interest in ORCO without triggering these regulations.

The first group of defendants are close associates of Vitek who misled Kingstown and other shareholders about Vitek's intentions.  Ott was Vitek's chief co-conspirator in this effort.  Throughout the relevant period, Ott presented himself as a neutral broker to shareholders, including Kingstown, who were concerned with maintaining the independence of ORCO's board.  Ott made misrepresentations in telephone calls to Kingstown in January 2013 and during a meeting with Kingstown in Manhattan in February 2013, when he falsely represented that he opposed Vitek's creeping influence over ORCO.  Vitek also used Czech Property Investments, a.s. ("CPI"), a company he controlled, and its employee Martin Nemecek ("Nemecek"), to conceal his purchases and mislead Kingstown.  CPI, now a subsidiary of CPI PG, was incorporated in the Czech Republic, and Nemecek is a citizen of the Czech Republic.

The FAC identifies twenty-one communications from Ott, Nemecek, and their agents that Kingstown received in New York from 2012 to 2014.  Those communications included correspondence from Ott and Nemecek, the circulation of "doctored" agendas for and minutes of board meetings, and conference calls during which Vitek misled ORCO shareholders.[3]

---

[3] Kingstown also alleges that "representatives of ORCO" transmitted to New York a copy of a subscription agreement to

A second group of defendants is comprised of two financial groups.  Defendants J&T Banka, A.S., J&T Finance Group SE, and Postova Banka, A.S. (collectively, the "J&T Group") are financial institutions incorporated and operating in the Czech Republic and Slovakia.  J&T Banka's principal role was to provide financing to Vitek and shell companies he controlled to purchase shares of ORCO.  It also assisted Vitek in stripping ORCO of two valuable assets: a set of real estate investment vehicles called the Endurance Real Estate Fund ("Endurance Fund") and ORCO Germany, a subsidiary of ORCO that merged with CPI in June 2014 to become CPI PG.  Ultimately, Vitek was able to acquire these assets at distressed prices.

Defendant Rothschild & Co. SCA ("Rothschild") is a holding company organized under the laws of France.  As alleged, it is the Rothschild worldwide financial advisory group.[4]  The FAC alleges that Rothschild acted as a broker for Vitek and his collaborators, beginning with Vitek's initial purchase of ORCO shares in October 2012 and extending through many of the

---

purchase shares in the company in July 2013.  No defendant to this action is identified as having made that transmission.

[4] Rothschild contends that Rothschild & Co. SCA, the Rothschild entity served in this action, performs neither brokering nor financial advisory services and is legally distinct from other Rothschild entities.

issuances of shares in ORCO and CPI PG.  All of the transactions
Rothschild brokered occurred in Europe.

The remaining defendants are alleged to have acted as shell
companies and straw purchasers for Vitek of large positions in
ORCO's and CPI PG's publicly traded stock between January 2013
and May 2016.  In 2016, after Vitek had solidified control over
ORCO and its assets, the shell companies sold their shares to
Nukasso Limited, a Cypriot CPI PG subsidiary controlled by
Vitek.

Vitek succeeded in removing Kingstown's representative from
the board of directors in January 2014.  In March 2014,
Kingstown abandoned its position in ORCO and sold all of its
shares.  In November 2014, ORCO issued another large block of
shares.  Vitek-controlled entities purchased these shares at
below-market prices, making Vitek the majority shareholder in
the company.

<u>Investhold's Claims</u>

In 2008, Vitek and Cmejla became partners in a number of
real estate investments.  Investhold provided the capital, Vitek
managed the projects, and each party retained a 50% interest in
the investments.  In 2010, Vitek and Cmejla entered into a
"parity partnership."  Pursuant to that arrangement, they
executed a series of agreements which entitled them to split

profits and losses and granted each a right of first refusal with respect to future investments.

Without Investhold's knowledge or consent, however, Vitek used the funding from the parity partnership to finance his takeover of ORCO and the misappropriation of its assets.  This involved hiding information about CPI and CPI PG, which Investhold partially owned through holding companies organized under the "parity partnership."  Additionally, Vitek secretly diluted Investhold's interest in CPI PG, leaving it with a fraction of the CPI PG stock it was due under the parity partnership.

In April 2016, Vitek, Cmejla, and Jiri Divis, a minority owner of Investhold, agreed to terminate the parity partnership. Pursuant to the terms of this "Buyout Agreement," Vitek would pay Investhold the value of its interest in the partnership. Vitek made one payment but later denied the existence of the Buyout Agreement, the parity partnership, and Investhold's 50% stake in CPI PG.

The Luxembourg Action

On January 20, 2015, three of the five Kingstown plaintiffs filed the Luxembourg Action against Vitek, CPI PG, Ott, ORCO and

others not named as defendants in the instant action.[5]  The
pleading (the "Luxembourg Summons") centers on Ott and Vitek's
plan to gain control of the ORCO board of directors and use that
control to issue shares that diluted the stakes of other
shareholders in ORCO.[6]  It alleges that Vitek used shell
companies as straw purchasers of ORCO stock to consolidate his
influence.  It also describes how ORCO, under Vitek's control,
orchestrated the sale of the Endurance Fund to J&T Banka in
early-2013 and suggests that Vitek eventually acquired those
assets.  The Luxembourg Summons also explains that Vitek and Ott
coordinated a below-market, dilutive share issuance of stock in
ORCO Germany to companies indirectly controlled by Vitek.  And
it alleges that, once he controlled the ORCO board, Vitek ousted
Kingstown from the ORCO board.  Kingstown seeks damages for the
loss it suffered in selling its shares in 2014.[7]

---

[5] The three Kingstown plaintiffs who filed the Luxembourg Action
are Kingstown Partners Master Ltd.; Kingstown Partners II, L.P.;
and Ktown L.P.

[6] In support of their motion, defendants have submitted a
translation of the Luxembourg Summons.  Plaintiffs do not
dispute the accuracy of the translation.

[7] In 2017, the Commission de Surveillance du Secteur Financier,
Luxembourg's financial regulator, issued a report (the "CSSF
Report") setting forth the findings of an investigation into
Vitek and Ott's conduct on the ORCO board from 2012 to 2016.
The CSSF Report found eight "indicators" of concerted action
between Ott, Vitek, and many of the defendants named in the
instant action.

Proceedings in the Luxembourg Action have not yet reached the merits of Kingstown's claims.  On October 23, 2018, the Kingstown parties filed an amended summons adding further detail to their claims, including excerpts from the press release for the CSSF Report.  On February 4, 2020, ORCO moved for dismissal of the Luxembourg Action.  That motion remains pending.

Procedural History

Plaintiffs filed this lawsuit on April 10, 2019.  The complaint named Vitek, Ott, CPI PG, and seven others as defendants.  Those defendants moved for dismissal in motions of September 10 and November 6, 2019.  On November 22, plaintiffs filed the FAC naming an additional nine defendants.  ORCO is not a named defendant.

The FAC asserts nine causes of action.  It brings a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, 18 U.S.C. § 1962(c), against Vitek, CPI PG, J&T Banka, J&T Finance Group, Postova Banka, and Ott.  This RICO claim is based on the predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343; money laundering in violation of 18 U.S.C. §§ 1956 and 1957; inducement to interstate or foreign travel in violation of 18 U.S.C. § 2314; and interstate and foreign travel in aid of racketeering in violation of 18 U.S.C. § 1952.  The alleged purpose of this enterprise was to deprive

plaintiffs of the value of their investments in CPI PG and ORCO. The FAC asserts a separate RICO claim against Vitek and Ott based on the same predicate acts committed for the purpose of compelling ORCO to sell its most valuable assets at below market rates.  The FAC brings a claim pursuant to 18 U.S.C. § 1962(d) against all defendants for conspiring to aid Vitek in carrying out the violations of 18 U.S.C. § 1962(c).  The FAC also brings claims under New York law of tortious interference with contract against J&T Banka, J&T Finance Group, Postova Banka, Rothschild, Mala, and Vitek; for conversion against all defendants; common-law fraud claims against Vitek and Ott; unjust enrichment against Vitek; and negligent misrepresentation against all defendants.

In motions filed on February 14 and April 17, 2020, the defendants who have been served moved to dismiss the FAC.[8] Collectively, the motions seek dismissal under Rules 8, 9(b) and

---

[8] The following defendants have been served: Vitek, CPI PG, Ott, Mala, J&T Banka, Postova Banka, J&T Finance Group SE, Španko, Safranek, Gerner, Strapek, Nemecek, Rothschild & Co. SCA, Sekanina, David, and Foltán.  Rothschild disputes that service has been effective on any Rothschild entity that conducts the brokering activities alleged in the FAC, but nonetheless makes affirmative arguments in favor of dismissal.  Defendants Levos Limited ("Levos"), LCE Company Limited ("LCE"), and Egnaro Investments Limited ("Egnaro") have yet to appear in this action and there is no proof of service on those entities filed on the docket.

12(b), Fed. R. Civ. P., pursuant to the doctrines of <u>forum non conveniens</u> and international comity abstention, based on various statutes of limitations, on the ground that the plaintiffs have not overcome the presumption that RICO claims do not have extraterritorial application, and for failure to state a claim. The motions were fully submitted on June 26, 2020.  For the following reasons, this action is dismissed as to all defendants based on the doctrine of <u>forum non conveniens</u>.

## **<u>Discussion</u>**

### I.   International Comity Abstention

The defendants have sought dismissal of Kingstown's claims[9] on the ground that abstention is required as a matter of international comity.[10]  A motion to abstain due to international comity is treated as a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P.  <u>See</u> <u>Levin v. Commerce Energy, Inc.</u>, 560 U.S. 413, 426-27 (2010) (noting that abstention under the comity doctrine "precludes the exercise of original federal-court jurisdiction"); <u>see also</u>

---

[9] Investhold is not a plaintiff in the Luxembourg Action. Therefore, the abstention argument will be considered insofar as it applies to Kingstown's claims.

[10] Although Španko has not sought dismissal on this ground, there is no reason to find that the abstention doctrine does not apply with equal force to this defendant.  <u>Vera v. Banco Bilbao Vizcaya Argentaria, S.A.</u>, 946 F.3d 120, 135 (2d Cir. 2019).

Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 100 n.3 (1998) (Younger abstention is "treated as jurisdictional").

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (citation omitted).  A district court may consider evidence outside the pleadings when resolving a motion to dismiss for lack of subject matter jurisdiction. Broidy Capital Mgmt. LLC v. Benomar, 944 F.3d 436, 441 (2d Cir. 2019).

Only the "clearest of justifications will warrant dismissal" because of pending litigation in a foreign court. Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 93 (2d Cir. 2006) (citation omitted) ("Royal & Sun Alliance").  A federal court has a "virtually unflagging obligation to exercise its jurisdiction." Id. (citation omitted).  A decision to abstain from exercising jurisdiction "based on the existence of parallel litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Id. at 94 (citation omitted).

> In the context of parallel proceedings in a foreign
> court, a district court should be guided by the
> principles upon which international comity is based:
> the proper respect for litigation in and the courts of
> a sovereign nation, fairness to litigants, and
> judicial efficiency.

Id. (citation omitted).  In order for proceedings to be deemed

parallel, the parties and issues need not be identical; they

must, however, be "substantially the same."  Id. (citation

omitted).

If the two proceedings are parallel, the court must

determine "whether exceptional circumstances exist that justify

the surrender of . . . jurisdiction."  Id. at 93.  The following

guideposts are useful in deciding whether exceptional

circumstances exist:

> the similarity of the parties, the similarity of the
> issues, the order in which the actions were filed, the
> adequacy of the alternate forum, the potential
> prejudice to either party, the convenience of the
> parties, the connection between the litigation and the
> United States, and the connection between the
> litigation and the foreign jurisdiction.

Id. at 94 (citation omitted).  Weighing those factors, the

motions to dismiss Kingstown's claims for reasons of

international comity are granted.

A.   Parallel Proceedings

This action, which was filed by Kingstown more than four

years after Kingstown commenced the Luxembourg Action, is a

parallel proceeding to that action.  Both lawsuits involve the

15

same core parties: Kingstown entities as plaintiffs and Vitek, Ott and CPI PG as defendants.[11]   Furthermore, they concern the same overarching theory of wrongdoing.   Both lawsuits assert claims based on Vitek's plan to acquire a secret controlling stake in ORCO and to dispose of the Endurance Funds and ORCO Germany at below-market prices.

Moreover, in both lawsuits Kingstown seeks essentially equivalent compensatory damages.   Kingstown's asserted RICO injury is described as the "loss of property related to [its] investment in ORCO, and the profits flowing therefrom" or "the profits they would have earned from their investments in ORCO, CPI PG, and affiliates."   In the Luxembourg Action, Kingstown seeks the difference between the price at which it sold its shares and the price at which they could have sold the shares absent the misconduct.

Plaintiffs contend that the two actions are not parallel. They emphasize that this action includes additional parties, specifically, more Kingstown plaintiffs and more defendants as co-conspirators.   The existence of the additional Kingstown plaintiffs does not expand the injury plaintiffs seek to redress.   And the addition of more defendants, who are

---

[11] The Luxembourg Summons also names ORCO and six ORCO directors as defendants.

essentially ancillary parties, does not alter the scope of the
alleged misconduct for which Kingstown seeks recover or the
likelihood of Kingstown succeeding in that quest.  For instance,
Kingstown does not assert that the two new Kingstown plaintiffs
-- Kingstown Capital Management, L.P. and Kingstown Capital
Partners, LLC -- would be entitled to relief separate from that
sought by the Kingstown entities who brought the Luxembourg
Action.  And the newly added defendants in the instant lawsuit
are the instrumentalities used by the defendants named in the
Luxembourg Action to effect their alleged scheme.  They are the
financial institutions and straw purchasers who aided Vitek.
Indeed, plaintiffs cast these defendants as simply additional
participants in a single conspiracy orchestrated by Vitek.
Kingstown's recovery in both actions depends upon showing
illicit conduct by Ott, Vitek, and CPI PG, each of whom is sued
in both actions.

Kingstown also points out that the legal theories of
liability are not identical.  The Luxembourg Action seeks
enforcement of that country's corporate laws, and does not
assert the claims of fraud or conspiracy pleaded here.  It is to
be expected that cases filed in different jurisdictions plead
different causes of action.  Suits proceeding under different
legal regimes need not plead identical theories of relief when

they seek adjudication of substantially similar wrongdoing causing substantially similar injury.  Cf. Brown Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 157 (2d Cir. 2017) (citation omitted) (noting in the context of res judicata that an action that "assert[s] a new theory or a different remedy" may be precluded by a prior action arising out of the same transaction or series of events).  The salient factor is whether the proceedings raise the same issues.  Royal & Sun Alliance, 466 F.3d at 94.  Here, both actions center around Vitek and Ott's coordinated plan to take control of ORCO through the issuance of dilutive shares and to misappropriate the Endurance Funds and ORCO Germany.

Lastly, the plaintiffs complain that the Luxembourg Action does not capture the full extent of Vitek and Ott's misdeeds.  Specifically, they assert that the Luxembourg Action does not include events through November 2014, when Vitek-controlled entities took a controlling stake in ORCO, or reference "misrepresentation," "deception," or "fraud."  But the Luxembourg Summons does describe duplicitous concerted action between Vitek, Ott and others.  That pleading cites Vitek and Ott's "malicious ingenuity" in making a pact to take control of the ORCO board.  And it references their organization of a secret "cabal" to "monopoliz[e] power within [ORCO]" and "oust[]

the Board of Directors."  It is of no moment that these characterizations of the defendants' wrongdoing do not precisely mirror those in the FAC.  In both actions, the plaintiffs describe the same coordinated behavior and series of transactions.  Similarly, while plaintiffs are correct that the FAC includes details of Vitek's later misconduct, the Luxembourg Summons covers the period that is central to Kingstown's injury -- the plan to remove its representative from the ORCO board, leading Kingstown to sell shares at a loss.

   B.   Exceptional Circumstances

   The Luxembourg Action is not only a parallel action, there are "exceptional circumstances" that warrant abstention.  Royal & Sun Alliance, 466 F.3d at 93.  Kingstown waited more than four years after filing the Luxembourg Action to press its rights in this lawsuit.[12]  New York's link to the facts underlying this

---

[12] As reflected in its press release of December 2013, Kingstown was aware of Vitek and Ott's wrongdoing as of that date. Kingstown stated:

> We at Kingstown believe that Jean-Francois Ott, Orco's CEO and Chairman, and Radovan Vitek, who controls Czech Property Investments ("CPI") and 31% of Orco's shares through various legal entities, are working together to their mutual benefit but to the disadvantage of other shareholders.  We believe that [ORCO] is the victim of their campaign to: (1) allow Mr. Vitek to exercise control over OPG with only a minority share position, (2) enable Mr. Vitek to strip assets out of [ORCO], and (3) drive down the price of [ORCO] to allow Mr. Vitek to purchase the remainder of [ORCO] at a bargain price at a later date.

litigation is tenuous; it rests on the existence of Kingstown

offices in New York, a few visits by Ott to New York and roughly

a score of communications received by Kingstown.  Except for

those contacts with New York, all of the events relevant to this

litigation occurred in Europe.  The scheme involves a

Luxembourg-based entity.  As one might expect, there are serious

issues of Luxembourg corporate law at stake.  Principles of

international comity dictate that the Luxembourg judicial system

be given the opportunity to resolve the Luxembourg Action, which

is a suit focused on conduct affecting a Luxembourg corporation

that occurred in Luxembourg.

New York certainly has an interest in protecting its

citizens from fraud perpetrated abroad.  Here, however, the New

York victim is a sophisticated party that initiated contact with

the foreign company, decided to invest in a foreign company, and

chose in the first instance to litigate its claims in that

company's home jurisdiction.  In these circumstances, there is

no strong New York interest to serve as a counterbalance to the

analysis set forth above.

Plaintiffs do not dispute that Luxembourg has the

predominant interest in resolving the issues surrounding Vitek's

conduct.  They argue, however, that judicial economy favors this

forum because the Luxembourg Action is moving more slowly than

this litigation.  They maintain that the practical burdens of litigating simultaneously in New York and Luxembourg are minimal, and that foreign-witness testimony could be obtained through depositions or letters rogatory.  They submit that they will be prejudiced by proceeding only in Luxembourg "in the form of lost time and critical discovery."

None of those arguments is persuasive or overcomes the exceptional circumstances supporting abstention that are present here.  The defendants have shown that they will be seriously prejudiced by being required to litigate in New York.  There is also a serious question as to whether Kingstown's own actions have delayed resolution of the Luxembourg Action.  In any event, plaintiffs ignore the practical burdens of concurrent litigation.  As the defendants explain, there are numerous barriers that will make discovery more onerous than if the relevant documents and witnesses were located in the United States.  The claims involve a complex constellation of European individuals and companies, many of which are not parties to this action and whose evidence would be available here, if at all, through a lengthy process of international discovery.  Obtaining that evidence for an American proceeding will also require expenditures for translation and compliance with European data protection and privacy laws.  Moreover, Kingstown has not

pointed to any evidence -- apart from that in its own files -- located in the United States.  Finally, it is difficult to envision how Kingstown would be prejudiced from proceeding in the forum it chose many years ago.

II.  Forum Non Conveniens

The defendants also seek dismissal pursuant to the <u>forum non conveniens</u> doctrine.  Each of the defendants has separately raised a defense that it is not subject to personal jurisdiction in this action.  This Opinion will address the issue of <u>forum non conveniens</u> without deciding whether there is personal jurisdiction over the defendants.[13]

Deciding a motion to dismiss on the ground of <u>forum non conveniens</u> requires a three-part analysis.  First, a court determines the "degree of deference properly accorded the plaintiff's choice of forum."  <u>Norex Petroleum Ltd. v. Access Indus., Inc.</u>, 416 F.3d 146, 153 (2d Cir. 2005).  Next, it considers "whether the alternative forum proposed by the

_____

[13] "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits."  <u>Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 431 (2007) (citation omitted).  The doctrine of <u>forum non conveniens</u> is one such threshold issue and involves "a non-merits based decision akin to dismissal for lack of personal jurisdiction." <u>Dattner v. Conagra Foods, Inc.</u>, 458 F.3d 98, 102 (2d Cir. 2006). Accordingly, courts may bypass issues of personal jurisdiction if another non-merits issue would dispose of the case.  <u>Sinochem Int'l Co.</u>, 549 U.S. at 432.

defendants is adequate to adjudicate the parties' dispute." Id.
Lastly, a court balances "public interest factors" and "private
interest factors" to ascertain whether the case should proceed
in plaintiff's chosen forum. Iragorri v. United Techs. Corp.,
274 F.3d 65, 73-74 (2d Cir. 2001) (en banc).

     A.    Deference to Plaintiffs' Choice of Forum

     The Second Circuit Court of Appeals has held that "the
degree of deference given to a plaintiff's forum choice varies
with the circumstances." Id. at 71.  In Iragorri, the Court of
Appeals instructed that district courts should locate the degree
of deference to be afforded a plaintiff's forum choice "'on a
sliding scale' depending on the degree of convenience reflected
by the choice in a given case." Norex Petroleum Ltd., 416 F.3d
at 154 (quoting Iragorri, 274 F.3d at 71).  In doing so, courts
must consider "the totality of circumstances supporting a
plaintiff's choice of forum." Id.

> The more it appears that a domestic or foreign
> plaintiff's choice of forum has been dictated by
> reasons that the law recognizes as valid, the greater
> the deference that will be given to the plaintiff's
> forum choice.  Stated differently, the greater the
> plaintiff's or the lawsuit's bona fide connection to
> the United States and to the forum of choice and the
> more it appears that considerations of convenience
> favor the conduct of the lawsuit in the United States,
> the more difficult it will be for the defendant to
> gain dismissal for forum non conveniens. . . .  On the
> other hand, the more it appears that the plaintiff's
> choice of a U.S. forum was motivated by forum-shopping
> reasons . . . the less deference the plaintiff's

23

> choice commands and, consequently, the easier it
> becomes for the defendant to succeed on a <u>forum non
> conveniens</u> motion by showing that convenience would be
> better served by litigating in another country's
> courts.

<u>Id.</u> at 154-55 (quoting <u>Iragorri</u>, 274 F.3d at 71-72).

Factors to be considered when determining whether a choice
of forum is motivated by convenience include:

> (1) the convenience of the plaintiff's residence in
> relation to the chosen forum, (2) the availability of
> witnesses or evidence to the forum district, (3) the
> defendant's amenability to suit in the forum district,
> (4) the availability of appropriate legal assistance,
> and (5) other reasons relating to convenience or
> expense.

<u>Id.</u> at 155 (quoting <u>Iragorri</u>, 274 F.3d at 72).

The Second Circuit has also identified several indicia of
forum shopping:

> (1) attempts to win a tactical advantage resulting
> from local laws that favor the plaintiff's case, (2)
> the habitual generosity of juries in the United States
> or in the forum district, (3) the plaintiff's
> popularity or the defendant's unpopularity in the
> region, or (4) the inconvenience and expense to the
> defendant resulting from litigation in that forum.

<u>Id.</u> (quoting <u>Iragorri</u>, 274 F.3d at 72).  A court should afford
"diminished" solicitude to "a plaintiff's choice of forum where
the plaintiff has actively sought international business and the
cause of action does not have significant ties to the
plaintiff's home forum."  <u>Carey v. Bayerische Hypo-Und
Vereinsbank AG</u>, 370 F.3d 234, 237 (2d Cir. 2004).

24

The plaintiffs' choice of forum is entitled to diminished deference.  There are two sets of plaintiffs here.  Little or no deference is owed to the Investhold parties' choice of this forum.  Norex Petroleum Ltd., 416 F.3d at 154 (citing Iragorri, 274 F.3d at 71).  They are foreign entities and all of the events associated with their claims occurred outside of New York, and indeed, almost entirely outside the United States.  If they were the sole plaintiffs they would be unable to show any connection between their claims and this jurisdiction.

The Kingstown plaintiffs, however, operate from offices in Manhattan.  In the ordinary case, substantial deference is given to a plaintiff's choice when the plaintiff brings suit in its home forum.[14]  Yet other factors, many unique to this litigation, do not entitle Kingstown's choice of forum to the customary deference.  Importantly, this case bears indicia of forum shopping.  Plaintiffs bring this suit more than four years after Kingstown filed a substantially similar action in Luxembourg. The salient difference between the two suits is the potential for treble damages under the RICO statute.  18 U.S.C. § 1964(c).

---

[14] This Opinion will assume without deciding that New York is the home forum for Kingstown.  It is unnecessary to consider in greater detail the degree of deference to be accorded to a foreign plaintiff whose business is conducted from New York offices or a Delaware entity which has brought suit in the jurisdiction where its offices are located.

25

The prospect of a treble damages award, however, is not a
legitimate reason for choosing this particular venue.

Furthermore, almost all of the witnesses and documentary
evidence are located in Luxembourg and the Czech Republic.
Plaintiffs gesture towards evidence located in New York, but do
not suggest what this evidence might be, aside from knowledge
possessed by the plaintiffs themselves.  It is worth repeating
that the European evidence is not confined to information in the
possession of a single individual or entity.  The breadth of
plaintiffs' allegations will require massive evidence gathering
abroad, almost all of which will have to be conducted in
compliance with European privacy and data restrictions.  None of
the witnesses apart from those associated with Kingstown are
within the subpoena power of this Court.  Proceeding with this
litigation will be massively inconvenient and expensive for
everyone.

As to the third consideration, the defendants may not be
amenable to suit here.  All of the defendants contest this
Court's jurisdiction over them.

Finally, it bears noting that the source of this litigation
was Kingstown's decision to make an investment in Europe.  It
sought out an investment in a European company whose securities
are traded on European stock exchanges and whose business is

26

conducted exclusively in Europe.  The plaintiffs describe an
injury that they suffered from a plan that was hatched by
European individuals and entities and executed in Europe.  While
Kingstown's choice of its home forum is entitled to some
deference, the facts underlying this action significantly
diminish the amount of that deference.

    B.   Adequacy of an Alternative Forum

A forum is generally adequate if defendants are amenable to
service of process there, but it may be inadequate if the remedy
it offers "is clearly unsatisfactory," such as where the
alternative forum "does not permit litigation of the subject
matter in dispute."  Piper Aircraft Co. v. Reyno, 454 U.S. 235,
254 n.22 (1981).  The alternative forum is not inadequate simply
because it does not afford plaintiffs the identical causes of
action or relief available in the plaintiffs' chosen forum.
Norex Petroleum Ltd., 416 F.3d at 158-59.

There can be no serious dispute that Luxembourg is an
adequate forum for this dispute.  Luxembourg is a modern,
sophisticated financial center with an advanced legal system.
Luxembourg allows suits based on, inter alia, complex financial
fraud, conversion, breach of fiduciary duty, and other business
torts.  See, e.g., Republic of Panama v. BCCI Holdings
(Luxembourg) S.A., 119 F.3d 935, 952 (11th Cir. 1997) (finding

Luxembourg adequate for the adjudication of fraud, conversion, and breach of fiduciary duty in liquidation proceedings); <u>In re Herald, Primeo,and Thema Sec. Litig.</u>, 2011 WL 5928952, at *14 (S.D.N.Y. Nov. 29, 2011)(finding Luxembourg "obviously adequate alternative for[um]" for complex securities litigation).

Kingstown itself initiated litigation in the Luxembourg courts in 2015 to obtain recovery for essentially the same conduct described in the FAC.  Each of the key defendants was already made a respondent in the Luxembourg Action.  They include Vitek, CPI PG, and Ott.[15]  Indeed, ORCO itself is a respondent in the Luxembourg Action but is not named as a defendant here.  The remaining defendants that the plaintiffs have named in the FAC, all of whom are European, are more easily served in Europe than pursuant to an action filed in this country.  Because the defendants all reside or are incorporated in European Union member states, they are subject to service of process and the jurisdiction of courts in Luxembourg, so long as

---

[15] Plaintiffs argue that Ott is not amenable to service in Luxembourg.  Ott was dismissed from the Luxembourg Action due to plaintiffs' failure to properly serve him.  An alternative forum is not inadequate simply because the plaintiff has made it imperfect.  <u>See</u> <u>Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV</u>, 569 F.3d 189, 202-03 (4th Cir. 2009); <u>see also</u> <u>MBI Grp., Inc. v. Credit Foncier du Cameroun</u>, 616 F.3d 568, 572 (D.C. Cir. 2010).

one defendant is domiciled there.[16]  CPI PG, one of the central entities in the alleged fraud, is domiciled in Luxembourg.  And as plaintiffs recognize, CPI PG has declared itself subject to the jurisdiction of Luxembourg over this dispute.[17]

Plaintiffs offer several brief arguments against Luxembourg's adequacy as a forum.  They principally assert that it lacks the robust discovery mechanisms available in American courts and that they cannot pursue claims as victims of a racketeering enterprise.  These arguments do not undermine the finding that Luxembourg provides an adequate forum.  In particular, the absence of an analogue to the RICO statute does not diminish Luxembourg's adequacy as a forum.  PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 74 (2d Cir. 1998) ("[T]he nonexistence of a RICO statute there does not, by itself, preclude the use of another forum.").

---

[16] See Expert Declaration of André Prüm, Professor of law and Chair of financial and business law, University of Luxembourg (the "Prüm Declaration").

[17] Plaintiffs apparently contend that in order for Luxembourg to be an adequate forum, each defendant must declare that they will accept service there.  Not so.  So long as Luxembourg courts could exercise jurisdiction over the defendants, they are amenable to process in that forum.  See Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir. 1996).  Plaintiffs do not dispute the conclusion in the Prüm Declaration that each defendant is subject to the jurisdiction of courts in Luxembourg by virtue of their connection to CPI PG.

C.   Private and Public Interests

Having concluded that plaintiffs' choice of forum is due limited deference and that an adequate alternative forum exists, the Court is tasked with weighing the competing private and public factors.  That calculus tips decidedly in favor of dismissal.

Private interest factors include:

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Iragorri, 274 F.3d at 73-74 (citation omitted).  Public interest factors a court may consider include: the administrative inefficiency in trying a case in a busy court and away from the locus of the injury; the burden that jury duty may impose on the community if the case is tried in a venue with no connection to the issues in dispute; a jurisdiction's interest in having a local case decided at home; and the benefits to having a matter tried in the forum whose law will govern the case.  Id. at 74 (citation omitted).

The private interest factors weigh heavily in favor of litigating this case in Luxembourg.  The difficulties in obtaining witnesses and evidence located abroad are significant.

None of the nineteen defendants resides or is incorporated in the United States, and some of the individual defendants have never set foot in this jurisdiction.  And, as explained above, non-party witnesses are beyond the subpoena power of this Court. It is worth repeating that this litigation requires massive foreign discovery, all in service of a purported scheme regarding European assets of a European company.  ORCO's securities are not traded on a U.S. stock exchange.  It does not have any presence in the United States.  Kingstown's injury followed from its status as a shareholder in ORCO.  The locus of its injury in this action was therefore in Luxembourg.  In short, there is little about this case that makes it a New York controversy.

The public interest factors also weigh heavily in favor of dismissal.  Of particular importance, Luxembourg has the predominant interest in the outcome of the conflict surrounding Vitek's conduct in connection with his investment with and participation in ORCO.  It was that jurisdiction's corporate governance laws that Vitek and the other defendants allegedly violated.  Accordingly, questions of foreign law will be significant in this litigation.  Where, as here, there is little connection to New York, those questions should be left to European courts.  See Piper Aircraft, 454 U.S. at 251 ("The

doctrine of <u>forum non conveniens</u> . . . is designed in part to help courts avoid conducting complex exercises in comparative law.").

In sum, Luxembourg is an adequate forum for resolution of the plaintiffs' claims against the defendants.  Indeed, it is already addressing those brought by Kingstown.  The private and public interest factors weigh strongly against finding this American forum the more appropriate venue for resolution the plaintiffs' claims.  That conclusion is not offset by the deference to be accorded Kingstown's choice of forum.  Even if Kingstown's choice of forum were accorded the deference customarily given to a plaintiff suing in its home forum, the defendants have shown that that deference is insufficient to maintain this action.

### Conclusion

The defendants' motions to dismiss of February 14, 2020 and April 17, 2020 are granted.  The reasoning set forth above would apply equally to the unserved defendants.  Accordingly, the action is dismissed against those entities as well.  The Clerk

of Court is directed to close this case.

Dated:     New York, New York
           September 4, 2020


                                    _____
                                         DENISE COTE
                                    United States District Judge